UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

J. LEE MCNEELY and MCNEELY
FAMILY TRUST,

       Plaintiffs,

-vs-                                   Case No.  5:10-cv-682-Oc-37TBS

JEFFREY T. BERK, D.V.M. and
OCALA EQUINE HOSPITAL, P.A.,

       Defendants.
_____

## ORDER

Before the court is defendants' Jeffrey T. Berk, D.V.M. ("Berk") and Ocala Equine

Hospital, P.A.'s ("OEH") Motion Pursuant to Rule 19(a)(1), filed on October 6, 2011.

(Doc. 43).  Plaintiffs J. Lee McNeely and McNeely Family Trust filed a response in

opposition on October 20, 2011.  (Doc. 45.)  For the reasons below, the defendants'

motion is due to be DENIED.

### I.  Facts and Background

This case involves the death of a thoroughbred Colt ("Colt") on or about February

12, 2009, while the Colt was boarded at Woodside Ranch in Ocala, Florida.  At the time

of the Colt's death, McNeely and the Trust owned a forty percent (40%) interest in the

Colt, which they purchased from the original owner, Tom Walters, for $250,000.

Walters continued to own the remaining sixty percent (60%) interest in the Colt.  The

plaintiffs entered into a syndication agreement with Walters.  Pursuant to the

agreement, Walters was given the responsibility to manage the Colt throughout his

breaking, training, and racing career (the "Syndicate").  In 2008, Walters and Bryan and

Holley Rice (the "Rices"), the proprietors of Woodside Ranch, entered into an oral agreement for the Rices to take possession of the Colt for the express purpose of caring for the Colt and training him to be a thoroughbred racehorse.  The Rices charged a fee for all services performed and expenses incurred by them (d/b/a/ Woodside Ranch).

In February 2009, the Colt reportedly suffered a minor injury to his leg.  The Rices consulted with defendant Berk, a licensed doctor of veterinarian medicine in the state of Florida, who was an employee of OEH at the time of the incident.  The plaintiffs allege that:

> . . . Berk initially treated the Colt and administered at least one shot of penicillin to the Colt.  Berk also trained an unlicensed individual on how to administer penicillin shots and then supplied Woodside Ranch with additional quantities of penicillin which Berk knew, or in the exercise of reasonable case [sic], should have known, would be administered to the Colt by an unlicensed individual, contrary to Florida statute.
>
> In February 2009, unbeknownst to Plaintiffs and/or the Racing Syndicate Manager, and contrary to Florida statute [section 407.213] and the recognized standard of care, Berk aided, assisted, and enabled an unlicensed individual to engage in the practice of veterinary medicine through the administration of penicillin shots to the Colt.  Reportedly, the Colt died immediately upon the injection of the penicillin by the unlicensed individual

(Compl. at 4.)  The plaintiffs brought claims of negligence (Count I), gross negligence (Count II), and res ipsa loquitur (Count III) against Berk and OEH.  Plaintiffs and Walters settled any potential claims against the Rices pursuant to a November 17, 2010 Release/Hold Harmless/Indemnity Agreement.  (Defs.' Mot. Ex. A at 12-14.)

In the present motion, Berk and OEH move, pursuant to Federal Rule of Civil Procedure 19(a)(1), for joinder of Walters, the co-owner of the Colt and/or for joinder of the Syndicate.  Alternatively, they move for dismissal of the Second Amended

Complaint for failure to state a cause of action.  The defendants contend that Walters and/or the Syndicate should be joined as indispensable parties pursuant to Rule 19(a) because their presence is "necessary and proper to a complete determination of the cause because each allegedly have an interest in the subject matter and disposition of the pending claim . . . [w]ithout such joinder, complete relief cannot be achieved among the parties."  (Defs.' Mot. at 4.)  The defendants also argue that the failure to join Walters and/or the Syndicate as indispensable parties will subject them to the inconvenience and expense of defending multiple lawsuits arising out of this claim and expose them to multiple, separate judgments.  (Id.)  Alternatively, the defendants allege that the failure to bring the action in the name of the real party in interest, the Syndicate, and/or to join Walters or other owners or members of the Syndicate, subjects the plaintiffs' Second Amended Complaint to dismissal for failure to state a cause of action because the plaintiffs lack standing to bring the present lawsuit.  (Id.)

The plaintiffs believe the defendants' motion should be denied because (1) the Syndicate is not an indispensable party pursuant to Rule 19(a) since it is not a joint venture, partnership, corporation, or other entity and therefore, cannot sue or be sued; (2) Walters has assigned to plaintiffs any claims he may have against the defendants, which eliminates Walters' interest in the lawsuit (the assignment is dated October 18, 2011); and (3) the Second Amended Complaint does not fail to state a cause of action because the plaintiffs have standing to bring these claims.  (Pls.' Resp. at 1, 3-7.)

## II.  Analysis

A.  Joinder Legal Standard

Federal Rule of Civil Procedure 19 governs the joinder of parties and provides in part that:

(a) Persons Required to be Joined if Feasible.

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  To determine whether a party is "indispensable" within the meaning of Rule 19, the Eleventh Circuit employs a two-part test.  First, "the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible.  If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." Focus on the Family v. Pinellas Suncoat Transit Auth., 344 F.3d 1263, 1279-80 (11th Cir. 2003) (citing Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc., 669 F.2d 667, 669 (11th Cir. 1982)).  "In making the first determination - i.e., whether the party in question 'should be joined,' 'pragmatic concerns, especially the effect on the parties and the litigation,' control." Id. (quoting Smith v. State Farm Fire & Cas. Co., 633 F.2d 401, 405 (5th Cir. 1980)); see also In re Torcise, 116 F.3d 860, 865 (11th Cir. 1997)

("findings of indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation.").

If the parties are "required parties" under this analysis, but cannot be joined (i.e., because they are non-diverse), Rule 19(b) provides a list of factors "to determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." <u>Molinos Valle Del Cibao, C. por A. v. Lama</u>, 633 F.3d 1330, 1344 (citing Rule 19(b)).  These factors include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

<u>Id.</u>  These factors are not intended to exclude other considerations and pragmatic considerations play a key role in the court's determination.  <u>Id.</u> (citing Rule 19(b) advisory notes).

B.  The Syndicate is Not an Indispensable Party Pursuant to Rule 19(a)

The assignment from Walters to plaintiffs although executed after the instant motion was filed, appears to resolve the issue of standing.  Regardless, the Court will discuss the defendants argument that the Syndicate is an indispensable party because (1) its presence is necessary and proper to a complete determination of this case

because it has an interest in the subject matter and disposition of the claim; (2) without joinder of the Syndicate, complete relief cannot be achieved among the parties; and (3) the failure to join the Syndicate will subject the defendants to the inconvenience and expense of defending multiple lawsuits arising out of this same claim and expose the defendants to multiple, separate judgments.  (Defs.' Mot. at 4.)  The plaintiffs contend that the Syndicate "is not a joint venture, partnership, corporation, or other entity.  It has no capacity to sue or be sued.  Therefore, it is not a proper party and not an indispensable party to this lawsuit."  (Pls.' Resp. at 3.)

The Court has reviewed the Syndication Agreement ("Agreement") and finds it does not create an entity with the capacity to sue or be sued, but rather is a contractual agreement between Walters and the plaintiffs for the division of the ownership of the Colt. Both Walters and the plaintiffs reside in Indiana.  Both Indiana and Florida law provide that joint ventures and partnerships are governed by the same law.  The Agreement is governed by Indiana Law pursuant to Paragraph 12 of the Agreement ("This Agreement shall be governed and construed under the prevailing law of the State of Indiana.").  Florida Statute 620.8106 provides that, "the law of the jurisdiction in which a partnership has its chief executive office governs relations among partners and between the partners and a partnership."

Under Indiana law, a joint venture is defined as an association of two or more persons formed to carry out a single business enterprise for profit.  See, e.g., DLZ Indiana, LLC v Greene Co., 902 N.E.2d 323, 328 (Ind. Ct. App. 2009) (citing Byrd v. E.B.B. Farms, 796 N.E.2d 747, 753 (Ind. Ct. App. 2003)).  In order for a joint venture to exist, "the parties must be bound by an express or implied contract providing for (1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct

and govern the understanding, that binds the parties to such an agreement." Id. (citing

Byrd, 796 N.E.2d at 754) (emphasis in original).  A joint venture is similar to a

partnership except that a joint venture contemplates only a single transaction.  Id.  For a

joint venture to exist, there must be "joint or mutual control, that is, an equal right to

direct and govern the undertaking." Inland Steel v. Pequignot, 608 N.E.2d 1378, 1382

(Ind. Ct. App. 1993).  In the present case, the Court finds the Agreement does not

establish a joint venture because there is not joint or mutual control between the parties

or an equal right to direct and govern the undertaking.  The Agreement establishes that

plaintiffs own a 40% interest in the Colt, but do not have control over the Colt or its sale.

The Agreement is clear that Walters, not the plaintiffs, has control over the

management of the Colt.  The Court highlights Paragraph 5 of the Agreement, which

provides in part as follows:

> MANAGEMENT BY TOM WALTERS
>
> Tom Walters will manage the Colt throughout its breaking, training and
> racing career.
> . . .
>
> The Racing Syndicate Manager [Walters] shall have the authority to sign
> contracts, arrange for the transportation of the colt, keep all books and
> records, employ trainers, jockeys, bookkeepers, attorneys, and
> accountant, incur liabilities, and collect and disburse funds in furtherance
> of the purpose of this Agreement.
>
> The Racing Syndicate Manager will initially decide who will train the colt.
> No trainer will be hired for a period longer than one (1) year, however,
> each year, the Racing Syndicate Manager may rehire any trainer.

(Agmt. at 9.)  Moreover, Paragraph 4 of the Agreement establishes that Walters shall

retain at least a 60% interest in the Colt.  There is no indication in the Agreement that

the plaintiffs were to have joint and mutual control over the Colt.  See, e.g., Am. Jr.

Proof of Facts 2d 295 (2010) ("it is generally agreed [by courts] that there must be a

community of interest in the subject matter of the agreement as well as a right to equal control."). The Court finds the plaintiffs and Walters did not intend for this Agreement to establish a joint venture. See, e.g., DLZ, 902 N.E.2d at 328-30; see also 12 Am. Jur. Proof of Facts 2d 295 (2010) ("As between the parties to the enterprise, intent to form a joint venture is the most basic element of the relationship. Whether the parties to a particular undertaking have created, as between themselves, the relation of joint venturers depends on their actual intent to associate themselves as such, and this is determined in accordance with the ordinary rules governing the interpretation and construction of contracts.") The Agreement calls for the sharing of earnings and expenses, which is one element required to establish a joint venture. However, this factor alone, in the absence of the other factors discussed, does not by itself establish a joint venture. See DLZ, 902 N.E.2d at 328-30 (joint venture not found in absence of intent, mutual control and profit sharing, despite use of the words "joint venture" by the plaintiff to describe what was contractually a subcontracting agreement between the alleged joint venturers); see also Meyer v. Christie, 634 F.3d 1132, 1158 (10th Cir. 2011) (stating that none of the factors used to determine whether a joint venture exists is "outcome-determinative").

The Court also finds the Agreement does not create a partnership or corporation. There has been no filing of any corporate documents by the parties or any other steps taken to form a corporation or other legal entity. In addition, the Indiana Partnership Act states in part that, [t]he sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." After a careful review of the Agreement, the court finds that the Agreement is a contract. Therefore, the Syndicate

is not an entity which can sue or be sued, and does not have any interest in the subject of the action as required by Rule 19(a)(1) to become an indispensable party.

C.      Walters is Not an Indispensable Party Pursuant to Rule 19(a)

The defendants argue that Walters is an indispensable party because (1) his presence is necessary and proper to a complete determination of this case because he has an interest in the subject matter and disposition of the claim; (2) without joinder of Walters, complete relief cannot be achieved among the parties; and (3) the failure to join Walters will subject the defendants to the inconvenience and expense of defending multiple lawsuits arising out of this same claim and expose the defendants to multiple, separate judgments.

Again, the assignment from Walters to the plaintiffs appears to dispose of this concern.  As Exhibit 1 to their response, the plaintiffs attach a copy of the assignment, executed on October 18, 2011, which states in part, "Tom Walters hereby assigns, conveys, grants, warrants, transfers, and delivers (collectively "Assignment") to J. Lee McNeely all of Tom Walters' right, title, and interest in the Colt and any litigation deriving from his sixty percent (60%) interest in the Colt."  (Id.)  Thus, there will now be no risk of multiple lawsuits by the plaintiffs or duplicative liability of the defendants in regard to Walters.  By virtue of the assignment Walters no longer has an interest in the subject of this action as required by Rule 19(a)(1) for the Court to find him to be indispensable.  The Eleventh Circuit has held that, "In making the first determination, i.e., whether the party in question should be joined, pragmatic concerns, especially the effect on the parties and the litigation, control." Focus on the Family, 344 F.3d at 1280. The Supreme Court has stated that findings of indispensability must be based on "pragmatic considerations" and examination of the circumstances of each case.  See

Provident Tradesmens Bank & Trust Co. v. Patterson, 390 US. 102, 106, 119 (1968).  In assessing pragmatic concerns in the present case, the Court finds the failure to join Walters in the present lawsuit will not affect the defendants' future liability because Walters assigned any claims he may have against the defendants to the plaintiffs. Therefore, Walters is not an indispensable party pursuant to Rule 19(a)(1).

D.  Motion to Dismiss

Lastly, the defendants argue in the alternative that the plaintiffs' Second Amended Complaint should be dismissed for failure to state a claim because the plaintiffs do not have standing.  For the reasons already explained the Court finds the plaintiffs have standing.

The defendants cited to Sivak v. Brady-Spencer Mgmt. Co., 590 So 2d 944 (Fla. 5th DCA 1991) to support their assertion that the plaintiffs lack standing to maintain an action on their own behalf.  However, the facts of Sivak differ greatly from the facts in the present case.  In Sivak, the court held that the agent of a party to a contract does not have standing to sue on behalf of the person who entered the contract.  Sivak, 590 So. 2d at 944-45.  The court found that a real estate purchase contract assignee who held a power of attorney from the purchaser-assignor was not the assignor's successor-in-interest and thus did not have standing to maintain an action on her own behalf alleging breach of contract.  The court stated that only the purchaser, or the assignee in her representative capacity based on the assignor's grant of power of attorney, could maintain an action.  Id.  The plaintiff had no actual rights under the contract and the contract had not been assigned to her.  These facts are unlike the present case, in which the plaintiffs were not only allegedly directly injured by the defendants' actions, but actually owned a 40% piece of the deceased Colt.

There are three requirements for standing: (1) injury in fact, which means an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, which means that the injury fairly can be traced to the challenged action of the defendant; and (3) the likelihood that the injury will be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).  The Court finds, taking the plaintiff's allegations as true, that they have established these elements and thus have standing to bring the claims asserted in the Second Amended Complaint.  The plaintiffs have alleged an injury in fact from the Colt's death due to their 40% ownership interest, that the actions of the defendants caused the Colt's death, and that their financial losses can be compensated by a favorable decision.

Lastly, the defendants believe the plaintiffs lack standing because the plaintiffs cannot sue on behalf of a corporation, the Syndicate.  While the court agrees that shareholders generally cannot sue in their own names for a corporate injury the present case does not involve a corporation.  The Syndicate was never incorporated.  Because the Syndicate is an ownership structure and not an entity which can sue or be sued under Indiana or Florida law (or the law of any other state), the defendants' argument is without merit

## III.  CONCLUSION

For the reasons above, the Defendants' Motion Pursuant to Rule 19(a)(1) is due to be DENIED.

IT IS SO ORDERED.

ORDERED and ADJUDGED on this 31st day of October, 2011 in Ocala, Florida.

THOMAS B. SMITH
United States Magistrate Judge

Copies to Counsel of Record